```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

**ANTHONY CURRY,**

    **Plaintiff,**

v.                                              Civil Action No. 2:04-cv-00439

**JOANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are the parties' cross-motions for judgment on the pleadings.

Plaintiff, Anthony Curry (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on February 1, 1999, alleging disability as of January 22, 1999, due to injuries sustained in a motor vehicle accident.  (Tr. at 81, 96.)  The

claims were denied initially and upon reconsideration.  (Tr. at 57-8, 251, 256-7, 260, 264.)  On August 17, 1999, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 71.) Hearings were held on February 5, 2002 before the Honorable John L. Melanson and on December 19, 2002 before the Honorable Richard Maddigan. (Tr. at 391-434; 435-464.)  By decision dated January 23, 2003, ALJ Maddigan determined that Claimant was not entitled to benefits.  (Tr. at 27-35.)  The ALJ's decision became the final decision of the Commissioner on June 27, 2003, when the Appeals Council denied Claimant's request for review.  (Tr. at 21-22.)  On May 7, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not

2

disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and is awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to

perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 29, Finding No. 2, tr. at 34.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of borderline intellectual functioning, residuals of multiple injuries sustained in a motor vehicle accident, and a personality disorder. (Tr. at 29.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 29.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 32, Finding No. 12, tr. at 35.) As a result, Claimant cannot return to his past relevant work. (Tr. at 32, Finding No. 11, tr. at 35.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as a stationary guard, cashier, and toll collector which exist in significant numbers in the national economy. (Tr. at 33-4; Finding No. 13, tr. at 35.) On this basis, benefits were denied. (Tr. at 34; Finding No. 14, tr. at 35.)

Scope of Review

The sole issue before this court is whether the final decision

of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 29 years old at the time of the second administrative hearing. (Tr. at 30.) He has a high school equivalent education (GED). (Tr. at 439.) In the past, he worked as an inserter at Charleston Newspapers. (Tr. at 97.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary. The court notes that several records and evaluations pertain to Claimant's mental conditions; however, Claimant has not raised any issues with respect to these. Accordingly, while the court considered these records, they will not be summarized or discussed herein.

Plaintiff sustained a Grade III liver laceration, open mandible fractures, a closed head injury, and an open right forearm fracture in a four-wheeler (ATV) accident on January 22, 1999. (Tr. at 141.) He was intoxicated upon his arrival at Raleigh General Hospital. (Tr. at 141.) He described a prior gunshot wound to his abdomen. After an almost week-long stay which included surgery, blood transfusions, treatment and testing, Claimant was released with instructions to follow up with several physicians. (Tr. at 142.)

Prakash Puranik, M.D. performed an open reduction and internal fixation of Claimant's right radius and ulna on February 23, 1999. (Tr. at 167-8.) Thereafter, Claimant had some difficulty with pain and healing of the fracture site, which prompted an emergency room visit on May 26, 1999. (Tr. at 195-6.) The examiner noted no redness or warmth, but Claimant's arm was tender over his plate. Claimant had normal distal motor function and normal sensation.

(Tr. at 195.) X-rays showed that the bones were aligned but the fracture lines were still present. (Tr. at 201.) The examiner prescribed Tylenol # 3 and instructed Claimant to follow up with Dr. Puranik. (Tr. at 199.)

State agency medical source James K. Egnor, II, M.D. completed a Physical Residual Functional Capacity Assessment form on July 29, 1999. (Tr. at 219-26.) He opined that Claimant had no exertional limitations, postural limitations, manipulative limitations, visual limitations, communicative limitations, or environmental limitations. (Tr. at 219-26.) Dr. Egnor indicated that he expected Claimant would fully recover by January 2000. (Tr. at 224.)

Subhash V. Gajendragadkar, M.D., an internist, examined Claimant at the state's request on January 23, 2000. (Tr. at 239-44.) He detected mild to moderate impairment in ranges of motion in Claimant's back, hips, and spine, together with pain secondary to posttraumatic arthritis and spinal radiculitis of moderate severity. (Tr. at 243.) Claimant was severely impaired in his ability to stand on his heels. (Tr. at 243.) Dr. Gajendragadkar diagnosed right upper extremity posttraumatic arthritis of moderate severity with decreased hand grips on the right side and mild aching or pain in the left side of the jaw. He also observed that Claimant had right forearm soreness with operative scar, but Claimant was able to write, pick up coins, button and perform find manipulative testing without difficulty. (Tr. at 243.)

7

Dr. Gajendragadkar opined that Claimant could lift 15-20 pounds occasionally; could stand and walk 3 to 4 hours per day, 15 to 20 minutes each time; and could sit 4 to 5 hours per day (15 to 20 minutes without interruption). Claimant could occasionally climb, balance, stoop, crouch, kneel, and crawl, all for no more than 3 to 5 minutes each time, and not more than 2 to 3 times in any 5-hour period. (Tr. at 245-6.) The doctor concluded that Claimant was severely impaired in his ability to reach; moderately impaired in his ability to handle; slightly impaired in his ability to feel; and moderately to severely impaired in his ability to push/pull. (Tr. at 246.) He indicated that Claimant had severe environmental restrictions, including heights, moving machinery, and vibration. Claimant had moderate limitations in tolerating temperature extremes, chemicals, dust, noise, fumes, and humidity. (Tr. at 247.)

On March 21, 2000, Claimant visited the emergency room complaining of back pain, jaw pain, and arm pain, and complaints that his liver was swollen. (Tr. at 334.) Claimant indicated that he had been playing basketball the day before, and that he felt that his liver was pulling. He also felt that his liver was moving around when he walked. (Tr. at 334.) Claimant requested that the emergency room physician complete a disability evaluation, but the physician would not do so. (Tr. at 335.) After testing, Claimant was discharged with medications and with instructions to schedule

an appointment at a surgery clinic. (Tr. at 328.)

A state agency medical source completed a Physical Residual Functional Capacity Assessment form on September 27, 2000. (Tr. at 360-7.) This physician concluded that Claimant could occasionally lift 50 pounds and could frequently lift 25 pounds; could stand or walk about 6 hours in a normal 8 hour workday; could sit for about 6 hours in a normal 8 hour workday; and could perform unlimited pushing or pulling. (Tr. at 361.) He could occasionally climb ladders, rope or scaffolds, and occasionally balance, and was otherwise unlimited posturally. (Tr. at 362.) He had no manipulative, visual, or communicative limitations. (Tr. at 363-4.) He should avoid concentrated exposure to vibration and hazards, but was otherwise unrestricted environmentally. (Tr. at 364.) The physician commented, "He seems to have recovered but still has residual pain—his symptoms seem credible for the most part. In view of the last report dated 3/21/00 it appears that he should be able to resume medium work activity." (Tr. at 365.)

The first hearing in this case took place on February 5, 2002. (Tr. at 391-434.) Medical expert Dr. Erwin Chillag testified that Claimant's physical impairments were limited to his arm, jaw and spine injuries. He testified that Claimant had good motion in his spine and no evidence of any weakness or neurological deficits in his lower extremities. (Tr. at 431.) He also stated that he had no idea what could be causing Claimant's arm pain. (Tr. at 430.)

In Dr. Chillag's opinion, Claimant had at least a one-year closed period from January 1999 through January 2000, due to his liver laceration, arm fractures, and jaw fractures and abrasions. (Tr. at 429-30.)

The presiding ALJ, the Honorable John L. Melanson, suspended the hearing in order to gather additional medical evidence, in particular, x-rays of Claimant's forearm, jaw, and lumbar spine, as deemed necessary by Dr. Chillag. (Tr. at 433.)[1] These were performed on August 9, 2002. (Tr. at 388.) The films showed a bullet lodged adjacent to the left side of L-5 with minimal narrowing of L5, S-1. There were no other abnormalities of the spine. The forearm x-rays revealed well-healed plate and screw fixation. The plate and screw fixation in Claimant's jaw were well-aligned. (Tr. at 388.)

These x-ray findings were admitted into the record on September 17, 2002. (Tr. at 433.) The hearing resumed on December 19, 2002 before the Honorable Richard J. Maddigan, who rendered the decision from which Claimant appeals. (Tr. at 435-63; 27-35.)

Claimant's Challenges to the Commissioner's Decision

---

[1] The opinion authored by the Honorable Richard J. Maddigan indicates that the hearing was continued in order that Claimant could undergo a psychological assessment by the West Virginia Disability Determination Services ("DDS"). The record shows that Judge Melanson ordered a psychological exam, but that Claimant was unable to keep the appointment due to his fiance's hospitalization. (Tr. at 304-313.) The record does not contain a report from such exam, nor does Judge Maddigan discuss findings from such exam; hence it appears that the exam did not take place.

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ did not properly weigh the medical evidence; specifically, that he erred by rejecting certain limitations prescribed by Dr. Gajendragadkar without analysis, and further erred by arbitrarily determining Claimant's residual functional capacity. (Pl.'s Br. at 8-11.) The Commissioner responds that the ALJ correctly devalued some of Dr. Gajendragadkar's opinions because the limitations he prescribed did not correlate medically, and that the ALJ's opinions were supported by substantial evidence of record. (Def.'s Br. at 8-13.) Claimant replies that the ALJ's failure to give proper discussion and analysis of the medical evidence mandates remand, and further argues that the vocational expert's opinions lacked foundation. (Pl.'s Rep. Br. at 1-4.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2003). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability (the more evidence, especially medical signs and laboratory findings in support of an opinion, the more weight will be given); (4) consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given); (5) specialization(more weight given to an opinion by a specialist

about issues in his/her area of specialty); and (6) various other factors. 20 C.F.R. §§ 404.1527(d)(2),(3),(4),(5) and 416.927(d)(2),(3),(4),(5)(2003). Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner.

SSR 96-8 then requires the ALJ to include in his opinion a <u>narrative discussion</u> describing how the evidence supports each conclusion of the RFC assessment, citing specific medical facts and nonmedical evidence. The ALJ must also explain how he resolved any material inconsistencies or ambiguities in the evidence. SSR 96-8P.

The majority of these requirements were lacking in the instant case. The ALJ determined without discussion that "a somewhat greater limitation exist[ed]" than that indicated by the DDS report of September 27, 2000. (Tr. at 30.) Then, without any analysis or citation to medical records or facts, the ALJ arbitrarily restricted Claimant to lifting and carrying no more than 20 pounds maximum, and no more than 10 pounds on a regular basis. (Tr. at 30.) While he later evaluated the effect of pain upon Claimant's functional abilities (tr. at 31-32), he still failed to discuss the medical underpinnings for the restrictions he imposed.

Having failed to cite the medical bases for his findings, the ALJ necessarily also failed to discuss the factors of supportability, consistency, specialization, and other

12

considerations required by the regulations. Finally, the ALJ failed to resolve the inconsistencies and ambiguities between the medical opinions pertaining to Claimant's injuries as required by SSR 96-8p.

The ALJ posed the following hypothetical to the vocational expert:

> If I had an individual age 26 with a GED and an unskilled work background, who was limited to light work, should avoid climbing and balancing, avoid concentrated exposure to vibration and hazardous occupational situations....machinery. Requiring a sit/stand option, limited use of the right hand for fine manipulation, no complex job instructions, able to do simple tasks, avoid social interaction with the public and coworkers, would I be expected to find jobs for someone with those limitations?

(Tr. at 450-1.)

The vocational expert answered that jobs such as a stationary guard, toll collector, and cashier would be available in significant numbers for such a person. (Tr. at 451-2.) Upon cross-examination, Claimant's attorney posed the additional restrictions prescribed by Dr. Gajendragadkar, and allowed the expert to review the report of those findings, Exhibit 9F, summarized above herein. (Tr. at 454.) In his opinion, the ALJ stated simply that those limitations were "not warranted for inclusion into the hypothetical question as a true reflection of Claimant's condition." (Tr. at 33.) He further stated, "The additional restrictions proposed by the claimant's attorney are not

13

supported by the medical records in the file and are inconsistent with analyses of the claimant's condition contained in the medical file and are inconsistent with the analysis of Dr. Erwin Chillag provided at the first hearing." (Tr. at 33.) The ALJ fails to state <u>how</u> or <u>why</u> these opinions are inconsistent or unreliable, and fails to identify which other medical evidence he does find reliable. He gives a conclusory statement, but fails to weigh the evidence.

It is impossible to determine from the opinion exactly how the ALJ arrived at his conclusions concerning Claimant's residual functional capacity. The opinion cited the September 2000 report of the DDS examiner, which limited Claimant to only occasional climbing of ladders, ropes and scaffolds, only occasional balancing and a need to avoid concentrated exposure to vibrations and hazardous machinery. (Tr. at 32, <u>citing</u> tr. at 362, 364.) However, that same report indicated that Claimant can lift up to 50 pounds occasionally and 25 pounds frequently; findings which the ALJ clearly rejected. (Tr. at 361.) The ALJ offered no rationale for accepting one portion of the report as reliable, while rejecting other portions. Meanwhile, Dr. Gajendragadkar limited Claimant to lifting and carrying 15-20 pounds every three to four hours maximum. (Tr. at 245.) But the court cannot assume, without citation, that Dr. Gajendragadkar's report is the basis of the ALJ's finding. Certainly, the ALJ dismissed the remainder of Dr.

14

Gajendragadkar's findings when Claimant's counsel incorporated those into the hypothetical question. (Tr. at 33.)

State medical source James K. Egnor, M.D., found <u>no</u> exertional limitations and no postural or manipulative limitations. (Tr. at 220-1.) Likewise, the state agency reviewer of September 2000 found no manipulative limitations. (Tr. at 222, 363.) Meanwhile, Dr. Gajendragadkar opined that Claimant was severely limited in reaching, moderately limited in handling, and slightly limited in feeling. (Tr. at 246.) These vast discrepancies were never addressed by the ALJ. In fact, the ALJ did not mention the opinions of Dr. Gajendragadkar or Dr. Egnor at all.

Dr. Chillag, who testified at the first hearing, opined that Claimant had, without question, at least a one-year closed period from January 1999 through January 2000. (Tr. at 429.) Neither Claimant, nor the Commissioner, nor the ALJ discussed this point. After considering all of the evidence, however, the court finds that Dr. Chillag's opinion is well-supported by medical evidence. Claimant was recovering from liver lacerations and severe arm fractures. He also had jaw fractures which Dr. Chillag noted would have made eating difficult. (Tr. at 430.)

Dr. Chillag testified that, based on the information available to him (which did not include the August 2002 x-rays), he could not give an opinion as to Claimant's limitations beyond that time. (Tr. at 429-30.) He indicated that additional x-rays of Claimant's

spine, jaw, and forearm were needed before he could form any opinions. However, it does not appear that Dr. Chillag or any other medical expert was asked to interpret the functional indications of the 2002 x-rays. Certainly, the ALJ read them and formed opinions as to their significance, but there was no medical support for those opinions.

The ALJ's failure to reconcile the discrepancies between Dr. Egnor's findings, Dr. Gajendragadkar's findings, and the state agency medical source's September 2000 findings necessitates a recommendation of remand by this court. The undersigned proposes that the presiding District Judge remand this case for a properly detailed evaluation of these items of evidence. The undersigned further proposes that the presiding District Judge find that Claimant is, at minimum, entitled to benefits for the one-year period from January 1999 through January 2000; and remand this case for consideration of whether Claimant is entitled to any benefits beyond that time.

In his Reply, Claimant argues that the vocational expert's testimony was deficient in that the expert failed to state the foundations for his opinions as to the number of jobs with a sit/stand option. (Pl.'s Rep. at 4.) This issue can be addressed on remand as well.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT IN PART** the

Plaintiff's Motion for Judgment on the Pleadings, **DENY IN PART** the Defendant's Motion for Judgment on the Pleadings, **REVERSE** the final decision of the Commissioner consistent with the proposed findings herein, **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

17

1984). Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

June 10, 2005
Date

Mary E. Stanley
United States Magistrate Judge